ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| EDDIE LAMAR COPELAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 310-061 |
| | ) |
| BRIAN OWENS, Commissioner of | ) |
| Georgia Department of Corrections, et al., | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Autry State Prison ("Autry") in Pelham, Georgia,[1] filed the above-captioned case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). As Plaintiff is proceeding IFP, his complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

Accordingly, on November 23, 2010, the Court screened Plaintiff's complaint in conformity with the IFP statute. The Court directed that service of process be effected on

---

[1] At the time of the events upon which Plaintiff's claims are based, he was incarcerated as Johnson State Prison ("JSP") in Wrightville, Georgia.

Defendant Ajiabade based on Plaintiff's Eighth Amendment claim for deliberate indifference, Defendants Gotell and Dennis based on Plaintiff's Eighth Amendment claim for excessive force, and Defendant Morales based on Plaintiff's First Amendment claim for retaliation. (Doc. no. 8.) The Court also recommended dismissal of Plaintiff's official capacity claims for monetary damages, any claims of excessive force or deliberate indifference against Defendant Morales based on supervisory liability, as well as Defendants Owens, Butts, Jones, Jefferson, Morris, Powell, Oneal, Soles, Linder, and Brown. (Doc. no. 7.)

Plaintiff objected to the recommendations for dismissal, and included several new factual allegations in his objection that had not been included in his original complaint. (Doc. no. 10.) Plaintiff requested to amend his complaint to include the additional allegations. (Id.) The Court granted Plaintiff's motion to amend. (Doc. no. 11.) Plaintiff has filed his amended complaint which includes Plaintiff's additional allegations from his objection. (Doc. no. 12.) As Plaintiff's amended complaint supercedes and replaces in its entirety his previous complaint, it is the amended complaint that the Court will now screen. Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) (recognizing that amended complaint supersedes original complaint); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).[2]

## I. BACKGROUND

Liberally construing Plaintiff's amended complaint, the Court finds that Plaintiff

---

[2]In a simultaneously entered Order, the Court has vacated its November 23, 2010 Report and Recommendation.

names the following Defendants: (1) Brian Owens, Commissioner of the Georgia Department of Corrections; (2) Jose Morales, Warden at JSP; (3) Larry Butts, Deputy Warden of Security at JSP; (4) Tim Jones, Deputy Warden of Care and Treatment at JSP; (5) Tracy Jefferson, Captain as JSP; (6) Keith Morris, Chief Counselor at JSP; (7) Gail Powell, Health Services Administrator at JSP; (8) Wesley Oneal, Lieutenant at JSP; (9) Donna Soles, Lieutenant at JSP; (10) Willie Linder, Sergeant at JSP; (11) Dr. Caleb Ajiabade,[3] Physician at JSP; (12) Curtis Brown, Counselor at JSP; (13) Michael Gotell, C.E.R.T. Officer at JSP; and (14) Bincent Dennis, C.E.R.T. Officer at JSP. (Doc. no. 12, ¶¶ 4-17.)

Plaintiff alleges that on January 6, 2010, at about 9:40 a.m., Defendant Gotell entered Plaintiff's cell and began to throw Plaintiff's belongings on the floor and bed of the cell. (Id. ¶ 4.) Plaintiff states that he asked Defendant Gotell why he was "throwing his things everywhere," and Defendant Gotell responded by handcuffing Plaintiff. (Id. ¶¶ 5-6.) Plaintiff claims that Defendant Gotell then lifted Plaintiff's arms and violently forced his head down by grabbing him by the hair. (Id. ¶ 7.) Plaintiff then alleges that Defendant Gotell hit Plaintiff's head against the window of the front exit door several times, used Plaintiff's head to open the door, and then forced Plaintiff's head against a fence. (Id. ¶ 8.) Plaintiff states that Defendant Gotell then took him to the isolation and segregation unit, where Defendant Linder assisted in taking Plaintiff up the stairs. (Id. ¶ 11.) Plaintiff claims that as they were walking up the stairs, Defendant Gotell stated, "When we get you to the shower, I am going to show you what we do to white boys that get [in] my face." (Id.)

---

[3]Plaintiff's amended complaint alters the spelling of this Defendant's name to Caleb Ajiabade instead of "Caleb Aljiabe" as stated in Plaintiff's prior complaint. Therefore, the **CLERK** is **ORDERED** to adjust the docket accordingly.

3

Plaintiff then alleges that Defendants Gotell and Linder were joined by Defendant Dennis at the top of the stairs at about 10:00 a.m., and Defendants Gotell and Dennis forced Plaintiff to the back of the showers. (Id. ¶ 12.) Plaintiff claims, at that point, Defendant Gotell held Plaintiff's head against the back of the shower wall while Defendant Dennis hit Plaintiff in the lower, right side of his back three times. (Id. ¶ 13.) Plaintiff claims that Defendant Linder closed the shower door in order to allow Defendants Gotell and Dennis to assault him. (Id. ¶ 12(A).) Plaintiff states that after the assault ended, Defendants Jefferson and Oneal came to the shower at approximately 10:05 a.m. (Id. ¶ 14.) Plaintiff states that he told them about the assault, but they told Plaintiff to "sit down and shut up." (Id.) Plaintiff further alleges that at about 10:30 a.m. he was placed in a segregation cell by another officer and instructed to fill out a medical request form, which he did. (Id. ¶ 16.) Plaintiff then states that Defendant Soles came to Plaintiff's cell at 12:30 p.m., and he told her about the assault and the resulting pain in his head and back where he had been struck. (Id. ¶ 17.) Plaintiff claims that Defendant Soles told him to fill out a medical request. (Id.)

Plaintiff claims that he was finally taken to the medical department at about 5:30 p.m. (Id. ¶ 14(H).) Plaintiff alleges that Defendants Jefferson and Oneal were somehow responsible for the delay in taking Plaintiff to the medical department by stating that "[Defendants Jefferson and Oneal] knew that all the doctors would leave at 5:00 p.m. and [Plaintiff] was [taken] to medical at approximately 5:30 p.m." (Id.) Once in the medical department, Plaintiff states that he was seen by a nurse who only took his blood pressure and confirmed that Plaintiff had a bruise over his right eye. (Id.) Plaintiff alleges that he asked to see a doctor and was told by the nurse that no doctors were available to see him and that

4

she would not contact the doctor on call. (Id.) On January 14, 2010, Plaintiff states that he returned to medical where he gave a urine sample that had blood in it. (Id. ¶ 21.) Plaintiff claims that he was then seen by Defendant Ajiabade, who did not want to examine Plaintiff after being told about the assault. (Id. ¶ 21(A).) Plaintiff states that Defendant Ajiabade told him that the blood in his urine had nothing to do with the assault, but did say that he would do an x-ray on Plaintiff.[4] (Id. ¶ 21(B).)

During the time following the alleged assault Plaintiff states that he attempted to contact several groups and individuals to inform them of his situation including his family, the ombudsman, the Southern Center for Human Rights, and the Sheriff of Johnson County. (Id. ¶¶ 25(E).) Plaintiff states that he did this in an attempt to find help. (Id.) Plaintiff states that as a result, Defendant Morales had him placed in segregation twice under the pretense of having a pending investigation against him. (Id. ¶ 25(D)-(F).)

Plaintiff subsequently filed a grievance against Defendants Gotell and Dennis. (See id. ¶ 24.) After filing the grievance, Plaintiff states that he asked his counselor, Defendant Brown, for a copy of it. (Id. ¶¶ 24-24(A).) Defendant Brown told Plaintiff that all assault grievances had to be sent to Internal Affairs, and that he did not know where Plaintiff's copy was. (Id.) Plaintiff alleges that Defendant Brown proceeded to tell him, "This is the reason why you got beat up[.] [W]e do this to keep inmates like you in your place." (Id.)

Plaintiff claims that he then spoke with Defendant Powell about the alleged

---

[4]Plaintiff claims that he filed a grievance against Defendant Ajiabade on January 14, 2010, due to the alleged inadequate medical treatment that Plaintiff received. (Doc. no. 12, ¶¶ 22, 22(A)-(B).) Plaintiff then claims that Defendant Morris was responsible for all grievance proceedings as Chief Counselor, but never states what happened to his grievance against Defendant Ajiabade.

5

inadequate medical treatment by Defendant Ajiabade. (Id. ¶ 23(A).) Plaintiff states that Defendant Powell told him that she had been informed that Plaintiff had signed a waiver refusing a sonogram or to be seen by a urologist. (Id.) Plaintiff claims that he never signed such a waiver. (Id. ¶ 23(B).) Plaintiff goes on to claim that he wrote to the ombudsman regarding his medical treatment on January 17 (Id. ¶ 25(H), and afterwards, he was called into security and questioned by Defendants Morales, Butts, and Jefferson about his alleged inadequate medical treatment. (Id. ¶ 25(C).) Plaintiff states that Defendant Morales suggested that they go to the medical department so he could prove that Plaintiff had signed the above-discussed waiver. (Id. ¶ 23(D).) As a result, Plaintiff states that he and Defendants Morales, Butts and Jefferson went to the medical department where Defendants Ajiabade and Powell were both present. (Id.) Plaintiff claims that, after several reviews of his file, no such waiver was found. (Id.) Plaintiff goes on to state that, despite the lack of a waiver, he was never taken to the hospital or to see a urologist. (Id. ¶ 21(L).) Plaintiff specifically claims that Defendant Morales should have ordered Defendants Powell and Ajiabade to send him to a urologist after no waiver was found. (Id. ¶ 25(G).)

Plaintiff states that he submitted a urine sample on January 20, 2010, which indicated that Plaintiff had a kidney infection and, once again, showed blood in his urine. (Id. ¶ 21(D).) Plaintiff then states that soon after, on January 22, 2010, Defendant Ajiabade wrote him a prescription for Sulfameth/TMP. (Id. ¶ 21(F).) However, Plaintiff claims that he did not receive the prescription until February 27th. (Id.) Plaintiff claims that the same day that Defendant Ajiabade wrote Plaintiff's prescription, Defendant Morales came to see Plaintiff in his cell due to a phone call that Defendant Morales had received from Plaintiff's

stepmother informing him about the assault. (Id. ¶ 25.) Plaintiff states that Defendant Morales told him that he believed Plaintiff's stepmother regarding the assault, that he had placed Plaintiff in segregation for his own protection, and that he had sent his grievance to Internal Affairs to investigate the assault. (Id.)

Plaintiff states that on January 28, 2010, he attended a disciplinary hearing before Defendant Soles based on a disciplinary report written by Defendant Gotell regarding the events of January 6th. (Id. ¶ 26(A).) Plaintiff claims that he was given an appeal form when he first walked in the room, and that it is a common saying at JSP that if Defendant Soles hands you an appeal form, then she has already decided that you are guilty. (Id. ¶¶ 26(B)-(C).) Plaintiff alleges that as soon as he made his statement, Defendant Soles stated that she found him guilty. (Id. ¶ 26(D).) Plaintiff claims that he had witness statements, but Defendant Soles refused to allow him to read them, or to have the witnesses themselves come testify. (Id. ¶ 26(D)-(E).) Plaintiff states that he was given fourteen days of isolation, and ninety days store and phone restriction. (Id.)

Plaintiff states that after he started taking the medication on February 27 that Defendant Ajiabade prescribed for him, the right side of his body began to swell and break out in blisters. (Id. ¶ 21(G).) Plaintiff alleges that he returned to see Defendant Ajiabade and was told for the first time that the medication was for uremic poisoning and that he would die if he did not take it. (Id. ¶ 21(H).) Plaintiff then states that Defendant Ajiabade wrote him another prescription for the same medication, but as Plaintiff continued to take it, the swelling and blistering got worse. (Id. ¶ 21(I).) Plaintiff claims that he was allergic to the medication (id. ¶ 21(S)), but that Defendant Ajiabade refused to take Plaintiff off of it. (Id.

7

¶ 25(I).) As a result, Plaintiff alleges that he developed a sore on his right thigh which became infected (id. ¶ 21(K)). Plaintiff states that he saw Defendant Ajiabade about the sore and was told that it was the result of an infected hair and that it was not ready to be lanced. (Id.) Plaintiff claims that he complained about the sore for several more weeks before Defendant Ajiabade saw him again and performed surgery upon it on March 15, 2010. (Id. ¶¶ 21(M)-(N).) Plaintiff states the surgery was performed in the medical department and resulted in a hole six to seven inches in diameter in his leg. (Id. ¶¶ 21(N)-(O).) Plaintiff also states that he had been on blood thinners for several years, and, as a result, the bleeding did not stop for two days. (Id. ¶¶ 21(O)-(P).) Plaintiff further claims that he signed no consent forms for the surgery. (Id. ¶ 21(Q).)

Plaintiff then claims that Defendant Morales called him into security at about 5:30 p.m. on the same day that Defendant Ajiabade had performed surgery upon him. (Id. ¶ 25(I).) Plaintiff states that he told Defendant Morales about the surgery and was still bleeding from it as Defendant Morales "humiliated" him in front of other members of the prison staff. (Id.) Plaintiff claims that Defendant Morales then transferred him to Autry fourteen hours after the surgery by Defendant Ajiabade in retaliation for filing grievances and for his attempts to contact people outside the prison regarding his allegations of assault and inadequate medical treatment. (Id. ¶¶ 21(Q), 25(D) & (I).) Plaintiff goes on to state that once at Autry, he remained in the Intensive Care Unit for almost two months. (Id. ¶ 21(Q).)

Plaintiff also makes several references throughout his amended complaint to a conspiracy among Defendants to cover up the alleged wrongdoings of Defendants Gotell, Dennis, Powell, and Ajiabade. (Id. ¶¶ 14(B), 23(E), 27(B).) Plaintiff's only complaint

regarding Defendants Owens, Butts, and Jones is that, due to the grievance and complaints submitted by inmates and their family members, they should be aware of and liable for the actions of Defendants Gotell, Dennis, Linder, and Ajiabade. (Id. ¶¶ 27-27(A).) Plaintiff also states that he has seen multiple physicians about the mental stress and anxiety that he suffered from the alleged assault and resulting inadequate medical care. (Id. ¶¶ 28, 28(A)-(D).) Plaintiff seeks monetary damages from each Defendant, including punitive damages. (Id. ¶ 33.)

## II. DISCUSSION

### A. No Official Capacity Claims

Plaintiff has attempted to sue Defendants in their official capacities for monetary damages. However, the Eleventh Amendment bars official capacity claims against state prison officials for monetary damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). In this case, Plaintiff's allegations relate to actions undertaken by Defendants while performing functions as state prison officials. Therefore, Plaintiff's official capacity claims for monetary damages are not cognizable and should be dismissed.

### B. Deliberate Indifference Claims Against Defendants Jefferson, Oneal, and Soles

Liberally construing Plaintiff's allegations against Defendants Jefferson, Oneal, and Soles in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that he fails to state a claim for deliberate indifference. Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners'

serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). "Deliberate indifference," the requisite state of mind for all Eighth Amendment claims except excessive force, requires proof that the prison official disregarded an excessive risk of which he was actually aware. Id. at 837-38; Thomas v. Bryant, No. 09-11658, 2010 U.S. App. LEXIS 17419, at *35-36 (11th Cir. Aug. 20, 2010).

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety. See id. at 837. When subjectively weighing whether prison officials are deliberately indifferent, the courts require a plaintiff to show "more than mere negligence," and look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted). To state a viable Eighth Amendment claim, Plaintiff must show that the defendant acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. See id. at 1543-44. Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Mere allegations of negligence or

10

malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

Here, Plaintiff has not met the two-pronged test described above as to Defendants Jefferson, Oneal, or Soles. Notably, "section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). Additionally, vague and conclusory allegations are not sufficient to state a claim. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (noting that vague and conclusory accusations are insufficient to state a civil rights claim). Here, Plaintiff fails to describe any actions taken by Defendants Jefferson and Oneal that have a causal connection to the alleged delay in medical treatment. Plaintiff does not explain how these Defendants could be responsible for delaying his medical treatment until after 5:30 p.m. when the only interaction that Plaintiff describes with them that day began at 10:05 a.m. when they entered the showers and ended at 10:30 a.m. when Plaintiff was placed in a segregation cell <u>by a different officer</u>. (Doc. no. 1, ¶¶ 12, 14, 16.) Instead, all Plaintiff offers is the vague and conclusory statement that "[Defendants] Jefferson and Oneal deliberately and knowingly denied me access to medical care because they knew that all [of] the doctors would leave at 5:00 p.m., and I was [taken] to medical at approximately 5:30 p.m." (Id. ¶ 14(H).) Thus, Plaintiff fails to state a claim for deliberate indifference against Defendants Jefferson and Oneal, and, as deliberate indifference is the only claim that Plaintiff asserts against them, they should be dismissed from this case.

As to Defendant Soles, Plaintiff once again fails to establish any kind of causal

connection between her actions and the alleged delay in his medical treatment. Plaintiff alleges that Defendant Soles visited him in his segregation cell soon after the assault and told him to fill out a medical request form when he informed her of the assault. (Id. ¶ 17.) As an initial matter, Plaintiff does not explain how Defendant Soles, a captain at JSP, was responsible for Plaintiff's medical care. Second, and more importantly, Plaintiff acknowledges that he was taken to the medical department and was examined by a nurse. Plaintiff simply does not explain how the actions of Defendant Soles had any bearing on his medical treatment. Thus, Plaintiff fails to state a claim for deliberate indifference against Defendant Soles. Therefore, Plaintiff's claim for deliberate indifference against Defendant Soles should be dismissed.[5]

### C. Defendants Brown and Morris

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, to the extent Plaintiff alleges that his constitutional rights were violated by Defendant Brown's refusal to supply Plaintiff with a copy of his grievance, his claim must fail. Similiarly, Plaintiff's allegations against Defendant Morris regarding Plaintiff's grievance against Defendant Ajiabade also fail. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), aff'd, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance

---

[5]In a simultaneously filed Order, the Court recommended that service of process be effected upon Defendant Soles based on Plaintiff's allegations of due process violations during his disciplinary hearing.

procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff' only allegation against Defendant Brown is that Plaintiff asked him for a copy of the grievance he had filed in connection with the assault and that Defendant Brown told him he did not know where Plaintiff's copy was. Similarly, Plaintiff's

sole claim against Defendant Morris is that Plaintiff's grievance against Defendant Ajiabade was not properly handled and that Defendant Morris, as Chief Counselor, is responsible. However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff's claims against Defendants Brown and Morris, regarding alleged violations of the grievance procedures, fail as a matter of law. As these are the only claims that Plaintiff alleges against Defendants Brown and Morris, they should be dismissed from this case.

### D. Supervisory Liability

#### 1. Defendants Owens, Butts, and Jones

To the extent that Plaintiff may be trying to blame Defendants Owens, Butts, and Jones for the alleged constitutional violations of their subordinates, his claims fail. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Plaintiff claims that

14

Defendants Owens, Butts, and Jones should have been aware of the actions of Defendants Gotell, Dennis, Linder, and Ajiabade due to grievances and complaints by inmates and their families. (Id. ¶ 27.) However, Plaintiff presents no allegations that Defendant Owens, Butts, or Jones personally participated in any purported constitutional violations.

Plaintiff also fails to allege a "causal connection" between the above-named Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[6] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Here, Plaintiff alleges that Defendants Owens, Butts, and Jones should have been aware of the actions of Defendants Gotell, Dennis, Linder, and Ajiabade due to grievances and complaints filed against them. However, Plaintiff does not allege that those Defendants were actually aware of any such grievances

---

[6]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

15

and complaints, much less that they were <u>actually</u> aware of the alleged constitutional violations committed by Defendants Gotell, Dennis, Linder, and Ajiabade. The mere existence of these grievances and complaints does not establish that those Defendants knew about any widespread abuse or that they were responsible for a custom or policy of using excessive force, failing to provide prompt and adequate medical treatment, or participating in retaliation against prisoners. See Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions). Therefore, Plaintiff has failed to state a claim upon which relief may be granted against Defendants Owens, Butts, or Jones on the basis of supervisory liability, and as that is the only claim that Plaintiff makes against these Defendants, they should be dismissed from this case.

### 2. Defendant Morales

To the extent that Plaintiff is attempting to blame Defendant Morales for any alleged unconstitutional acts of his subordinates related to excessive force or deliberate indifference, his claims fail for the same reasons discussed above.[7] Plaintiff fails to demonstrate that Defendant Morales either actually participated in the alleged constitutional violation, or that there was a causal connection between the actions of Defendant Morales and the alleged acts

---

[7] In a simultaneously filed Order, the Court is directing that service of process be effected upon Defendant Morales solely based upon Plaintiff's First Amendment claim for retaliation resulting from direct actions by Defendant Morales. However, this section does not address that issue, but rather addresses whether Defendant Morales can be held legally accountable for the alleged constitutional violations of his subordinates regarding claims of excessive force or deliberate indifference.

of excessive force and deliberate indifference. See Hartley, 193 F.3d at 1269. First, Plaintiff has not alleged that Defendant Morales personally participated in any acts of excessive force or deliberate indifference. Plaintiff does allege that Defendant Morales was aware of Plaintiff's complaints regarding his medical care and that Plaintiff did not sign a waiver refusing to see a urologist or have a sonogram. However, Plaintiff's allegation that Defendant Morales was aware of those issues does not establish any kind of personal participation in the alleged acts of deliberate indifference by Defendant Ajiabade. For instance, Plaintiff does not claim that Defendant Morales told Defendant Ajiabade to deny Plaintiff treatment or that Defendant Morales helped him perform the alleged surgery. In fact, soon after Defendant Morales became aware of the nonexistent waiver, Plaintiff was written a prescription for his kidney problems by Defendant Ajiabade.

Second, Plaintiff has failed to demonstrate a causal connection between Defendant Morales and Plaintiff's claims of excessive force and deliberate indifference. As stated above, a causal connection can be established by: (1) a history of widespread abuse that puts the supervisor on notice and the supervisor fails to act, Brown, 906 F.2d at 671; (2) an improper policy or custom of the supervisor that results in deliberate indifference to constitutional rights, Hartley, 193 F.3d at 1269; or (3) facts that support an inference that the supervisor directed subordinates to act unlawfully or knew that they would and failed to stop them. Cottone, 326 F.3d at 1360. Plaintiff's allegations that Defendant Morales knew about the nonexistent waiver and Plaintiff's complaints regarding his medical care are not sufficient to meet the high standard of widespread abuse, nor do they establish that he was responsible for a custom or policy that resulted in deliberate indifference, or directed his

subordinates to perform any acts amounting to deliberate indifference. Thus, any claims of excessive force or deliberate indifference against Defendant Morales based upon supervisory liability should be dismissed.

E.  **General Conspiracy**

Finally, to the extent Plaintiff suggests that there was some sort of conspiracy afoot among Defendants to cover up the alleged actions of Defendants Gotell, Dennis, Linder, Powell and Ajiabade, such allegations fail to state a claim upon which relief can be granted. That is, a conspiracy claim supported only by conclusory, vague, and general allegations may be dismissed. Kearson v. Southern Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985) (*per curiam*); see also Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) ("[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. . . It is not enough to simply aver in the complaint that a conspiracy existed."). To prove conspiracy under § 1983, a plaintiff must (1) prove the parties had a "meeting of the minds" or reached an understanding to violate the plaintiff's rights and (2) prove an actionable wrong to support the conspiracy. Bailey v. Board of County Comm'rs of Alachua County, Fla., 956 F.2d 1112, 1122 (11th Cir. 1992). "[T]he linchpin for conspiracy is agreement, which presupposes communication . . . ." Id. Here, at most, Plaintiff's allegations attempt to suggest that Defendants may have individually decided to "cover" for other staff members at JSP. However, Plaintiff does not offer sufficiently specific details about when or how any "meeting of the minds" occurred between the Defendants in which they mutually decided to violate Plaintiff's rights. Accordingly, Plaintiff has failed to state viable conspiracy claims, and thus, such claims should be dismissed.

## III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's conspiracy claims, official capacity claims for monetary damages, claims for deliberate indifference against Defendant Soles, claims of excessive force and deliberate indifference against Defendant Morales based on supervisory liability, as well as Defendants Owens, Butts, Jones, Jefferson, Morris, Oneal, and Brown, be **DISMISSED**.[8]

SO ORDERED this 10th day of March, 2011, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[8] In a simultaneously filed Order, the Court has directed that service of process be effected on Defendants Ajiabade and Powell based on Plaintiff's Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs, Defendants Gotell and Dennis based on Plaintiff's Eighth Amendment claim for excessive force, Defendant Linder based on Plaintiff's Eighth Amendment claim for deliberate indifference to safety, Defendant Soles based on Plaintiff's Fourteenth Amendment claim for violations of his due process rights, and Defendant Morales based on Plaintiff's First Amendment claim for retaliation.